UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Juan Salcedo Tumbaco Malave, | Case No. 24-cv-2404 (SRN/DLM) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| United States of America, | |
| Respondent. | |

---

This matter is before the court on Petitioner Juan Salcedo Tumbaco Malave's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1.) In his petition, Mr. Tumbaco Malave argues that the Federal Bureau of Prisons ("BOP") has arbitrarily extended his sentence by one year. (*Id.* at 1.) He contends that his release date should be March 16, 2025 (Doc. 1-1), and that by changing his release date to March 16, 2026, the BOP has violated his right to due process under the Fourteenth Amendment (Doc. 1 at 1). This petition comes before this Court for review under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court.[1] It has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that Mr. Tumbaco Malave's petition be denied, and this action be dismissed with prejudice.

---

[1] Although Mr. Tumbaco Malave's petition was not filed under 28 U.S.C. § 2254, the Court may apply the rules governing that section per Rule 1(b).

## BACKGROUND

Mr. Tumbaco Malave is a citizen of Ecuador without valid immigration status in the United States who is currently serving a 120-month term of imprisonment at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"). (Docs. 7 ¶ 3; 7-2 at 1.) He is serving this sentence based on his conviction for conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a), 70506(b), and 21 U.S.C. § 960(b)(1)(B)(II), as well as aiding and abetting the same charge. (Doc. 7 ¶ 3.) *See also USA v. Villa-Villon et al - Juan Salcedo Tumbaco-Malave*, No. 8:17-cr-459(3) (SCB/AEP) (M.D. Fla. Sept. 21, 2017). On June 20, 2024, Mr. Tumbaco Malave filed this petition seeking judicial review of the length of his term of imprisonment. (*See generally* Doc. 1.)

Specifically, Mr. Tumbaco Malave alleges that, based on the credits he had earned under the First Step Act ("FSA") while incarcerated, his projected release date should be March 16, 2025. (*Id.* at 1.) In fact, the BOP informed Mr. Tumbaco Malave that was his release date in a document dated April 2, 2024. (Doc. 1-1 at 1.) However, by the time Mr. Tumbaco Malave filed this petition a few months later, the BOP had changed course: instead of a release date of March 16, 2025, Mr. Tumbaco Malave's release date had increased by one year to March 16, 2026. (Doc. 1 at 1.) He filed this petition because he "was not advised of this change," which he asserts was a failure of "due process of law, as the 14th Amendment demands." (*Id.*) He asks that he be permitted to proceed *in forma*

*pauperis* in this habeas action based on his financial circumstances, and requests that the Court appoint him an attorney who can speak Spanish. (*Id.*)

The government responds that Mr. Tumbaco Malave is not eligible to apply his earned time credits under the FSA because he is an inadmissible alien detainee subject to a final order of removal under federal immigration law. (Doc. 6 at 3–4; *see also* Doc. 7-2 at 1 (containing Mr. Tumbaco Malave's final order of removal).) Respondent argues that although Mr. Tumbaco Malave earned time credits under the FSA while subject to a detainer for possible deportation based on his immigration status, once the government issued a final order of removal for Mr. Tumbaco Malave on April 17, 2024, he was no longer eligible to *apply* those earned time credits to early release according to the FSA. (Doc. 6 at 4.)

## I. MR. TUMBACO MALAVE IS SUBJECT TO A FINAL ORDER OF REMOVAL AND IS THUS INELIGIBLE FOR FSA CREDIT APPLICATION.

Congress enacted the First Step Act in 2018 to reduce the federal prison population while also creating mechanisms for maintaining public safety by reducing recidivism risk. Congressional Research Service, *The First Step Act of 2018: An Overview*, 1 (2019), https://perma.cc/9JDZ-H6JH. Through the FSA, Congress created a system of incentives to encourage prisoner participation in recidivism-reducing programming. 18 U.S.C. § 3632(d). Among these incentives are FSA "time credits" ("FTCs") that allow people who successfully complete their assigned recidivism-reducing programming to earn FTCs. *Id.* § 3632(d)(4)(A). FTCs are "applied toward time in pre-release custody or supervised release." *Id.* §§ 3632(d)(4)(c), 3624(g). This means that under the FSA, if a person's

sentence includes a period of supervised release, the BOP may transfer that person to begin their supervised release term up to 12 months before their sentence otherwise ends. *Id.* § 3624(g)(3).

The BOP applies earned FTCs toward pre-release custody or early transfer to supervised release under 18 U.S.C. § 3624(g) only if an eligible person has: (1) earned FTCs in an amount that is equal to the remainder of their imposed term of imprisonment; (2) shown a demonstrated recidivism risk reduction through periodic risk assessments or maintained a low or minimum recidivism risk; and (3) had the remainder of their term of imprisonment computed under applicable law. *Id.* § 3624(g)(A)–(C). However, the FSA provides for some express exceptions to this rule.

Under the FSA, "[a] prisoner is ineligible to apply time credits . . . if the prisoner is the subject of a final order of removal under any provision of the immigration laws." 18 U.S.C. § 3632(d)(4)(E)(i). Under current BOP policy, a prisoner can earn FTCs while they are subject to a detainer relating to an unresolved immigration status, so long as no final order of removal has been issued. *Jenkins v. Segal*, 23-cv-425 (WMW/DTS), 2023 WL 7135216, at *1 (D. Minn. Apr. 26, 2023), *R. & R. adopted,* 2023 WL 7131024 (D. Minn. Oct. 30, 2023), *aff'd,* 23-3550, 2023 WL 11692933 (8th Cir. Dec. 1, 2023). That said, once a final order of removal issues, the FSA unambiguously states that any FTCs earned can no longer be applied to early release. 18 U.S.C. § 3632(d)(4)(E).

Where, as here, a statute is unambiguous, courts take the text itself and presume Congress "says in the statute what it means and means in the statute what it says." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). The FSA expressly excludes

4

individuals with a final order of removal from receiving the application of their earned FTCs to their early release. 18 U.S.C. § 3632(d)(4)(E). Mr. Tumbaco Malave does not dispute that a final order of removal has been issued against him, and the government has provided that final notice in its exhibits. (Doc. 7-2.) The Court therefore finds that the BOP's adjustment to Mr. Tumbaco Malave's projected release date is not arbitrary, and is in fact required by statute given his ineligibility to have his earned FTCs applied to the duration of his sentence of incarceration. 18 U.S.C. § 3632(d)(4)(E). Finding that the duration of his sentence is therefore proper, the Court recommends that Mr. Tumbaco Malave's habeas petition be denied.

## II.  NEITHER THE BOP NOR THIS COURT HAVE AUTHORITY OVER A FINAL ORDER OF REMOVAL OR THE DUE PROCESS THAT SHOULD BE AFFORDED TO A PRISONER SUBJECT TO SUCH AN ORDER.

As to Mr. Tumbaco Malave's due process claim,[2] he does not explain what, if any, additional process he should have received from the BOP concerning the effect of his final notice of removal on his FTCs. Certainly, it is understandable that receiving a report of a

---

[2] The Due Process Clause of the Fourteenth Amendment provides that "[n]o State . . . shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Yet Mr. Tumbaco Malave is in federal custody, and his petition does not allege that state actors deprived him of due process of law, but that the BOP suddenly imposed 12 additional months of incarceration on him without due process. Therefore, the Court construes his claim under the Fifth Amendment of the federal Constitution. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (a document filed pro se is to be liberally construed). Due process applies to BOP actions through the Fifth Amendment, which provides "procedural protection against arbitrary actions of the government which affect an individual's life, liberty or property interest." *Terry v. Fondren*, No. 8-cv-1059 (PJS/SRN), 2008 WL 5071077, at *4 (D. Minn. Nov. 24, 2008) (citing U.S. Const. amend V). "The Fifth Amendment . . . protects [aliens and citizens alike] from deprivation of life, liberty, or property without due process of law." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976).

5

12-month increase in one's projected release date is concerning, particularly when a prisoner such as Mr. Tumbaco Malave had earned that reduction through recidivism-based programming. The FSA attempts to account for circumstances like this by requiring that the Attorney General ensure that an alien's FTC-disqualifying status be determined "at a date as early as practicable during the prisoner's incarceration." 18 U.S.C. § 3632(d)(4)(E)(ii). It is hard to imagine a set of circumstances where making this determination toward the final months of a person's 10-year sentence (as was done here) is "as early as practicable." That said, the BOP lacks the authority to decide immigration-related matters, has no power to alter the timing of when a final notice of removal issues, and cannot change the effects of the final notice of removal on Mr. Tumbaco Malave's FTCs. *See United States v. Navarro*, 218 F.3d 895, 898 (8th Cir. 2000) ("Congress has virtually plenary power over immigration matters, and it has the right to determine the conditions upon which noncitizens are allowed to remain in this country."); *Balleza v. King*, No. 24-cv-160 (NEB/LIB), 2024 WL 4394219, at *3 (D. Minn. Aug. 9, 2024) (explaining that the Federal Bureau of Immigration Appeals ("BIA") has jurisdiction to decide immigration-related matters under the authority given to them by Congress under the Immigration and Naturalization Act of 1990, 8 U.S.C. §§ 1101, *et seq.*), *R. & R. adopted*, 2024 WL 4392477 (D. Minn. Oct. 3, 2024). The BOP's role here was simply to determine Mr. Tumbaco Malave's eligibility for *application* of FTCs, something conclusively answered by statute once there was a final order of removal. It is regrettable that this application-determination occurred so late in Mr. Tumbaco Malave's period of

incarceration, and after he had completed all the programming necessary to earn those credits.[3] But there is no due process violation stemming from that determination.

As for the final order of removal itself, this Court is not the proper venue to consider its validity. *See id.* ("This Court, however, lacks the jurisdiction to adjudicate Petitioner's challenge to the validity of the final order of removal" because "that authority lies exclusively with the appropriate court of appeals.") (citing 8 U.S.C. § 1252(a)(5); *Tostado v. Carlson*, 481 F.3d 1012, 1014 (8th Cir. 2007); *Cruz Quiceno v. Segal*, No. 23-cv-358 (NEB/DJF), 2023 WL 3855295, at *3 (D. Minn. Apr. 21, 2023), *R. & R. adopted*, 2023 WL 3853433 (D. Minn. June 6, 2023); *Pina v. Martinez*, No. 2:23-cv-1628 (KK), 2023 WL 9423314, at *2 (W.D. La. Dec. 11, 2023), *R. & R. adopted*, 2024 WL 314263 (W.D. La. Jan. 26, 2024); *Anyanwu v. Bd. of Immigr. Appeals*, No. 20-cv-2475 (NEB/HB), 2021 WL 1609127, at *2 (D. Minn. Apr. 26, 2021)).

### III.   NO EVIDENTIARY HEARING IS NECESSARY.

Finally, an evidentiary hearing is appropriate only when material facts are in dispute. *Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995). An evidentiary hearing is not required when a conclusion can be reached on the issue with the undisputed facts. *United States v. Winters*, 411 F.3d 967, 973 (8th Cir. 2005). This matter can be resolved based on the record and therefore the Court finds no evidentiary hearing is necessary.

---

[3] As stated above, a prisoner may still earn FTCs when there is an unresolved immigration detainer, but cannot apply them (something that occurs toward the end of a person's sentence, *see* 18 U.S.C. § 3624(g)(1)(A)), if there is final order of removal. *Jenkins*, 2023 WL 7135216, at *1–2; 18 U.S.C. § 3632(d)(4)(E)(i).

# RECOMMENDATION

Accordingly, based on all of the above, **IT IS RECOMMENDED** that:

1. Petitioner Juan Salcedo Tumbaco Malave's Petition for Writ of Habeas Corpus under 28 U.S.C. §2241 (Doc. 1) be **DENIED**; and

2. Petitioner's request to proceed in forma pauperis (Doc. 1) be **DENIED AS MOOT**;

3. Petitioner's request for the appointment of an attorney (Doc. 1) be **DENIED AS MOOT**; and

4. This matter be **DISMISSED WITH PREJUDICE**.

Date: November 7, 2024

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).